UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-80057-CR-ROSENBERG/HOPKINS(s)

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JANIO VICO and
JHARILDAN VICO, a/k/a "Harold Vico",

     Defendants
_____/

## STIPULATED SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED by and between the United States of America and

VELOCITY COMMERCIAL CAPITAL, LLC (VELOCITY), to compromise and settle its

interest in the following property ("the Property"):

    a. A parcel of land located at 669 Pacific Grove Drive, Unit #3, West Palm Beach,

Florida 33401, and more particularly described as:

> Unit No. 3, Building 11A, Cityside, a Condominium,
> according to the Declaration of Condominium thereof, as recorded
> in Official Records Book 18734, Page 669, and all amendments
> thereto, of the Public Records of Palm Beach County, Florida,
> together with an undivided interest in the common elements
> appurtenant thereto.

This stipulated settlement is entered into between the parties pursuant to the following

terms:

    1. On February 11, 2016, VELOCITY filed a verified petition. Docket Entry 206.

2. The parties to this agreement hereby stipulate that VELOCITY had a prior vested or superior interest in the property or is a bona fide purchaser for value of the right, title, or interest in the property, and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

3. The United States agrees that upon the interlocutory sale of the Property pursuant to an order of the Court, or upon conviction of the captioned defendants and entry of a Final Order of Forfeiture forfeiting the Property to the United States and sale of the Property pursuant to the final order of forfeiture, the United States will not contest payment to VELOCITY from any proceeds remaining from the sale of the property up to the maximum amount specified in paragraphs 3.a, 3. b., and 3.c, after payment of outstanding taxes and expenses of custody and sale incurred by the U.S. Marshals Service, the following:

a. Unpaid principal due to VELOCITY in the amount of $131,351.72 as of January 1, 2016, pursuant to the mortgage instrument dated October 6, 2014.   The mortgage was recorded on October 8, 2014, in the official records of Palm Beach County, Florida, Official Records 27086, at Page 1829, and is attached as Exhibit A.

b. All unpaid interest at the base contractual rate (not the default rate) under the above mortgage instrument, that is $2,412.00 as of March 31, 2016, plus interest at the rate of $26.80 per day from April 1, 2016, until the date of payment; and

c. As of February 2, 2016, there was $408.55 remaining in the escrow account.  The money in the escrow account is being used to pay liability and hazard insurance in the amount of $6.50 a month.  Velocity will continue to pay the liability and hazard insurance from the escrow account.  Once the escrow account is depleted, the monthly liability and hazard insurance premium paid by VELOCITY will be reimbursed until the date of payment from the sale proceeds.

4.   Payment to VELOCITY is conditioned upon the United States prevailing against the defendant and any other competing claims.

5.   The payment to Petitioner VELOCITY shall be in full settlement and satisfaction of all claims by VELOCITY arising from and relating to the seizure, detention, and forfeiture of the property.

6.   Simultaneous with payment, VELOCITY will provide a release of its mortgage to the United States.   VELOCITY further agrees to release and hold harmless the United States, and any agents, servants, and employees of the United States (or any involved state or local law enforcement agencies and their agents, servants, or employees,) in their individual or official capacities, from any and all claims by VELOCITY and its agents that currently exist or that may arise as a result of the Government's action against and relating to the property.

7.   Petitioner VELOCITY agrees not to pursue any other rights that it may have under the mortgage instrument, including but not limited to the right to foreclose upon and sell the Property and any right to assess additional interest or penalties.

8.   Petitioner VELOCITY understands and agrees that by entering into this Settlement of its interest in the Property, it waives any rights to litigate further its interest in the Property and to petition for remission or mitigation of the forfeiture.   If the Agreement is approved by the Court, then unless specifically directed by an order of the Court, VELOCITY shall be excused and relieved from further participation in this action.

9.   VELOCITY understands and agrees that the United States reserves the right to void the settlement agreement if, before payment of the mortgage or lien, the U.S. Attorney obtains new information indicating that the mortgagee or lienholder is not an "innocent owner" or "bona fide purchaser" pursuant to the applicable forfeiture statutes.   In the event that the U.S. Attorney voids

3

the settlement agreement, then the agreements and stipulations by both parties are void.   The U.S.

Attorney also reserves the right, in its discretion, to terminate the forfeiture at any time and release

the Property.   In either event, the government shall promptly notify the mortgagee or lienholder of

such action.   A discretionary termination of forfeiture shall not be a basis for any award of fees.

10.  VELOCITY agrees to execute further documents, to the extent necessary, to convey

clear title to the Property to the United States and to further implement the terms of this settlement.

11.  Each party agrees to bear its own costs and attorneys' fees.

12.  Payment to VELOCITY pursuant to this settlement agreement is contingent upon a

court-authorized interlocutory sale of the Property or the United States' prevailing against the

defendant and any third parties claims in an ancillary proceeding, the Court's entry of a final order

of forfeiture to the United States, and sale of the property pursuant to the final order of forfeiture.

The terms of this settlement agreement shall be subject to approval by the United States District

Court.  Violation of any terms or conditions shall be construed as a violation of an order of the

Court.

Respectfully submitted,

WIFREDO A. FERRAR
UNITED STATES ATTORNEY

BY:  _____
ANTONIA J. BARNES (FL Bar # 261777)
Assistant U.S. Attorney
Antonia.Barnes@usdoj.gov
United States Attorney's Office
500 S. Australian Ave., Ste. 400
West Palm Beach, Fl. 33401-6235
Telephone: (561) 820-8711
Facsimile: (561) 655-9785
Attorney for United States

4

BY: _____

C. CRAIG ELLER, ESQ. (FL Bar # 267816)
celler@broadandcassel.com
One North Clematis Street, St. 500
West Palm Beach, Fl. 33401
Telephone: (561) 832-3300
Facsimile: (561) 650-1153
Attorney for Velocity Commercial Capital, LLC

BY: _____

MATT HORWITZ
AVP-Portfolio Manager of Velocity Commercial
Capital, LLC

5

CFN 20140373135
OR BK 27086 PG 1829
RECORDED 10/08/2014 15:21:12
Palm Beach County, Florida
AMT 138,000.00
Deed Doc 483.00
Intang 276.00
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1829 - 1846; (18pgs)

Prepared by and record and return to:

Velocity Commercial Capital, LLC

Ocwen Loan Servicing, LLC

PO BOX 7089

Attention: Servicing Department

Westlake Village, CA 91359-7089

## COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Mortgage") is entered into as of **October 6, 2014**, between **Janio Vico**, an individual, with an address of **682 Cresta Circle, West Palm Beach, Florida 33413** (the "Mortgagor") and Velocity Commercial Capital, LLC, a a California limited liability company, with an address of PO BOX 7089, Westlake Village, CA 91359-7089 (the "Lender").

The real property which is the subject matter of this Mortgage consists of the following planned unit development unit(s): **669 Pacific Grove Drive #3, West Palm Beach, Florida 33401** (the "Address(es)").

### 1. MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES

1.1 <u>Mortgage</u>. For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Lender and all obligations respecting that certain **Semi-Annual Adjustable Term Note**, dated **October 6, 2014**, by **Janio Vico** in favor of the Lender in the original principal amount of **$138,000.00** (the "Note"; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

This Mortgage shall mature on November 1, 2044.

EXHIBIT "A"

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Mortgage total $138,000.00 as of the date of this Mortgage but this Mortgage shall nevertheless secure payment and performance of all Obligations.

1.2     Security Interest in Property.   As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of Florida (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder.

1.3     Collateral Assignment of Leases and Rents.   The Mortgagor hereby irrevocably and unconditionally assigns to the Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property.  This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by the Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Lender exercises its rights and remedies to collect such rents as set forth herein.

1.4     Conditions to Grant.   The Lender shall have and hold the above granted Property unto and to the use and benefit of the Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

1.5     Property.   The term "Property", as used in this Mortgage, shall mean the Unit(s), as more particularly described in Exhibit A attached hereto, together with: (i) all right, title and interest now or hereafter existing, belonging or pertaining thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined, (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof, together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

1.6     Obligations.   The term "Obligation(s)," as used in this Mortgage, shall mean without limitation all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter

2



owing by the Mortgagor to the Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Lender; or are due indirectly by the Mortgagor to the Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

1.7    Cross-Collateral and Future Advances.  It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

1.8    Future Advances.  This Mortgage secures both existing indebtedness and such future advances or additional advances as may be made from time to time by Lender at its option to Mortgagor, or its successor in title, for any purpose permitted under this Mortgage, provided that all those future or additional advances are made within twenty years from the date of this Mortgage or within such lesser period of time as may be hereafter provided by law as a prerequisite for the sufficiency of actual notice or record notice of the optional future or additional advances as against the rights of creditors or subsequent purchasers for valuable consideration. The total amount of Obligations secured by this Mortgage may decrease or increase from time to time but the total unpaid balance so secured at any one time shall not exceed $276,000.00, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Property, plus interest on such disbursements at the rate then applicable to the Obligations. If, pursuant to Section 697.04 of the Florida Statutes, Mortgagor files a notice specifying the dollar limit beyond which future advances made pursuant to this Mortgage will not be secured by this Mortgage, then Mortgagor shall, within one (1) day of filing such notice, notify Lender and its counsel by certified mail pursuant to Section 2.6 of this Mortgage. The filing by Mortgagor of the notice specified in the prior sentence shall constitute an Event of Default hereunder.

## 2.    REPRESENTATIONS, WARRANTIES, COVENANTS

2.1    Representations and Warranties.  The Mortgagor represents and warrants that:

(a)    This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(b)    The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances");

3



(c)     The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d)     As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Lender; and

(e)     Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

2.2     Recording; Further Assurances. The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of the Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Lender in the Property and the rights of the Lender under this Mortgage. Mortgagor will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other or further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes the Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes the Lender to file financing statements describing any agricultural liens or other statutory liens held by the Lender.  Mortgagor agrees to furnish any such information to the Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as the Lender may reasonably request for the Lender (i) to obtain an acknowledgment, in form and substance satisfactory to the Lender, of any bailee having possession of any of the Property that the bailee holds such Property for the Lender, and (ii) otherwise to insure the continued perfection and priority of the Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes the Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

2.3     Restrictions on the Mortgagor. The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Lender in each instance:

(a)     Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(b)     Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

4



(c)     Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give the Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and the Lender's interest therein against the claims of all persons and, unless the Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or the Lender's interest hereunder.

2.4    <u>Operation of Property</u>. The Mortgagor covenants and agrees as follows:

(a)     The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(b)     The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Lender, provide deductible amounts acceptable to the Lender, name the Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Thirty (30) days prior written notice to the Lender. Such policies shall include (i) a mortgage endorsement determined by the Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Lender may request. The Mortgagor will furnish to the Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount



sufficient to prevent the application of the coinsurance provisions;

(c)     Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of the Lender, execute any assignment of the Leases except in favor of the Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(d)     Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Lender and the Lender's agents, employees and representatives, at such reasonable times as the Lender may request, to enter and inspect the Property and such books and records; and

(e)     Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

2.5     Payments. The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by the Lender, the Mortgagor shall deposit from time to time with the Lender sums determined by the Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property: provided that it contests the same diligently and in good faith and by proper proceedings and, at the Lender's request, provides the Lender with adequate cash security, in the Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to the Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to the Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Lender. In addition, Mortgagor hereby agrees to pay any and all excise or documentary stamp taxes (including intangible taxes) plus any penalties or late charges now due and owing or hereinafter assessed in connection with this Mortgage and/or any other loan documents. If Mortgagor shall fail to pay such sums, the Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by the Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.6     Notices; Notice of Default. The Mortgagor will deliver to the Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to the Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7     Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Lender, describing the nature and extent thereof. The Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of

6



any Taking. The Mortgagor shall not settle any such claim without the Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Lender and immediately pay the same to the Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Lender in amounts not exceeding the Obligations. The Lender may apply such amounts to the Obligations in such order as the Lender may determine.

2.8     Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Lender and, at the option of the Lender, be applied to the Obligations in such order as the Lender may determine; provided, however, that if the Lender shall require repair of the Property, the Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Lender and promptly paid to it.

### 3.    CERTAIN RIGHTS OF THE LENDER

3.1     Legal Proceedings. The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. The Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

3.2     Appraisals/Assessments. The Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as the Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

3.3     Financial Statements. The Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Lender.

3.4     Tax Return. Mortgagor shall provide the Lender with copies of Mortgagor's filed Federal and state tax returns for the prior year within 30 days after the date that Mortgagor's tax returns are required to be filed.

3.5     Leases and Rent Roll. The Mortgagor shall deliver to the Lender (i) during each calendar year and at such other times as the Lender shall request a rent roll for the Property, in form acceptable to the Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Lender shall request executed copies of all the Leases.

### 4.    DEFAULTS AND REMEDIES

4.1     Events of Default. "Event of Default" shall mean the occurrence of any one or more of the following events:

(a)     default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

7



(b)     failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(c)     the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d)     failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(e)     default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(f)     if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(g)     if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(h)     the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(i)     the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(j)     the service upon the Lender of a writ in which the Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(k)     a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in affect for any period of thirty (30) consecutive days without a stay of axecution;

(l)     any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(m)     the termination or revocation of any guaranty of the Obligations; or

(n)     the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or

8



circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Lender has been or may be impaired.

4.2    Remedies. On the occurrence of any Event of Default the Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a)    Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b)    Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Lender upon the Property for any reason shall not cause the Lender to be a mortgagee in possession, except upon the express written declaration of the Lender;

(c)    With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints the Lender as its true and lawful attorney with the power for the Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases.  The Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order es the Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Lender shall be liable to account only for such Rents actually received by the Lender.  Lessees under the Leases are hereby authorized and directed, following notice from the Lender, to pay all amounts due the Mortgagor under the Leases to the Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d)    Foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as the Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property.  In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Lender shall, in its sole and exclusive discretion, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter.  In addition, the Lender may in its discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e)    Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the

9



Mortgagor shall provide the Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Lender "control" over the Property or cause the Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f)     Take such other actions or proceedings as the Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

At any time on or after the date on which Lender files a complaint to foreclose this Mortgage, the court in which such complaint is filed may appoint a receiver for the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of the Mortgagor and without regard to the value of the Property. Such receiver shall have (i) the power to collect rents, issues and profits (x) during the pendency of the suit, (y) during the full statutory period of redemption (whether there be redemption or not), if any, in the case of a sale and a deficiency, and (z) at any other time when Mortgagor, but for the intervention of such receiver, would be entitled to collect such rents, issues and profits and (ii) all powers which may be necessary or are permissible in such cases in order to protect, possess, control, manage and operate the Property. Mortgegor shall deliver to Lender at any time at its request therefor all agreements for deed, contracts, leases, abstracts, title insurance policies, muniments of title, surveys and other papers relating to the Property and, in the case of foreclosure thereon and failure to redeem, the same shall be delivered to and become the property of the person(s) obtaining a certificate of title to the Property by reason of such foreclosure. In the event that Lender shall enforce any right or remedy under this Mortgage by receiver, entry or otherwise, and such proceeding shall be discontinued or abandoned for any reason or shall be determined adverse to the Lender, then in every such case the Mortgegor and the Lender shall be restored to their prior positions hereunder and all rights, remedies and powers of the Lender hereunder, at law and in equity shall be restored and in full force and effect and available to Lender.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.



4.3     Advances. If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.4     Cumulative Rights and Remedies. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that the Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

4.5     Mortgagor's Waiver of Certain Rights. To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5.     MISCELLANEOUS

5.1     Costs and Expenses. To the extent permitted by applicable law, the Mortgagor shall pay to the Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with the Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

5.2     Indemnification Regarding Leases. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold the Lender and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

5.3     Indemnification Regarding Hazardous Substances. The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any

11



current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to the Lender including repayment of all Obligations.

5.4      Indemnitee's Expenses. If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

5.5      Waivers. The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of the Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Lender's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under any such other agreement or transaction) but all the Lender's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

5.6      Waiver of Homestead. To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Section 222.01, Florida Statutes.

5.7      Joint and Several. If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

5.8      Severability. If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

5.9      Complete Agreement. This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.



5.10  Binding Effect of Agreement.  This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Lender; and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

5.11  Notices.  Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

5.12  Governing Law.  This Mortgage shall be governed by the laws of the State of Florida.

5.13  Reproductions.  This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.14  Jurisdiction and Venue.  The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Florida, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to the Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

5.15  JURY WAIVER.  THE MORTGAGOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE MORTGAGOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.


EXECUTED under seal as of the date first above written.



Witnesses:

Print Name   DAVID F PISCIONE

Print Name

Mortgagor:

Janio Vico, individually

STATE OF FLORIDA

COUNTY OF Palm Beach    : SS.

The foregoing instrument was acknowledged before me this _6_ day of _October_ _2014_. 20_14_, by Janio Vico. Such person is personally known to me or has produced a _FL DL_ as identification.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

Notary Public State of Florida
David F Piscione
My Commission EE 834709
Expires 09/13/2018

14

# Exhibit A

Unit No. 3, Building 11A, Cityside, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 18734, Page 669, and all amendments thereto, of the Public Records of Palm Beach County, Florida, together with an undivided interest in the common elements appurtenant thereto.

Parcel Identification Number: 74434317310110013

**EXHIBIT "B"**

**Permitted Encumbrances**

None

Commercial Mortgage 1                                    © 2014 Medici, a division of Wolters Kluwer Financial Services

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER, dated as of October 6, 2014, is incorporated into and shall be deemed to amend and supplement that certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents, of even date herewith (the "Mortgage"), by Janio Vico, an individual, with an address of 682 Cresta Circle, West Palm Beach, Florida 33413 (the "Mortgagor") in favor of Velocity Commercial Capital, LLC (the "Lender") to secure the Obligations (as defined in the Mortgage).

The real property which is the subject matter of the Mortgage consists of the following planned unit development unit(s):  669 Pacific Grove Drive #3, West Palm Beach, Florida 33401 (the "Unit(s)"). Such real property includes an undivided interest in the Unit(s) and all rights appurtenant thereto under Chapter 718, Florida Statutes, including, without limitation, an undivided interest in the common elements of the planned unit development project (the "Planned Unit Development Project") in which such real property is included and formed pursuant to a Declaration of record.  The real property also includes all of the Mortgagor's interest in the association of unit owners of the Planned Unit Development Project and all of the Mortgagor's right, title and interest in any property or proceeds of such association.

In addition to all of the covenants and agreements in the Mortgage, the Mortgagor and the Lender further covenant and agree as follows:

1.  Planned Unit Development Obligations.  Mortgagor shall perform all of Mortgagor's obligations under the Planned Unit Development Project's Constituent Documents.  The "Constituent Documents" are (i) the Declaration and any other document which creates the Planned Unit Development Project; (ii) the bylaws, rules and regulations of the association of unit owners of the Planned Unit Development Project; and (iii) any other equivalent documents.  Mortgagor hereby agrees to pay when due all dues and assessments imposed respecting the Unit(s) pursuant to the Constituent Documents.

2.  Insurance.  So long as the association of unit owners respecting the Planned Unit Development Project maintains insurance respecting the Unit(s) and the common elements of the Planned Unit Development Project in compliance with the requirements in the Mortgage the Mortgagor's obligations in the Mortgage to keep the Unit(s) insured shall be satisfied; provided that the Mortgagor will nevertheless comply with all obligations in the Mortgage to furnish to the Lender evidence of such insurance.

3.  Insurance and Condemnation Proceeds.  In addition to the Lender's rights provided in the Mortgage regarding the proceeds of insurance or any taking of all or any part of the property covered by the Mortgage, the Mortgagor hereby assigns to the Lender all of its right, title and interest in such proceeds, to the extent such proceeds are attributable to the common elements in the Planned Unit Development Project.

4.  Lender's Prior Consent.  Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, agree to or vote for (i) the abandonment or termination of the Planned Unit Development Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is not for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the association of unit owners of the Planned Unit Development Project; or (iv) any action that would have the effect of rendering the insurance coverage on the Unit(s) or the Planned Unit Development Project unacceptable to Lender.

5.  Remedies.  In addition to all of its remedies and rights pursuant to the Mortgage, if the Mortgagor fails to pay any planned unit development dues and assessment when due, the Lender may at its option pay such amounts, which such amounts shall be added to the Obligations and until repaid to the



Lender shall bear interest from the date of disbursement by the Lender at the same rate as the Obligations.

Executed under seal as of the date written above.

Witnesses:                            Mortgagor:


_DAVID F BELLAIRE_
Print Name                            Jacob Vico, individually


Print Name

2